LAW OFFICES

# KOLES, BURKE & BUSTILLO, L.L.P.

2600 KENNEDY BOULEVARD, SUITE 1K
JERSEY CITY, NEW JERSEY 07306

| | | |
|---|---|---|
| **JONATHAN KOLES** <br> MEMBER OF N.J. & N.Y. BARS <br> **JOHN M. BURKE** <br> **RAOUL BUSTILLO** <br> MEMBER OF N.J. & N.Y. BARS <br> FAX NO. (201) 200-0410 <br> _____ <br> **MERCEDES DIEGO** <br> MEMBER OF N.J. & N.Y. BARS | (201) 200-0300 <br> E-MAIL: rbustillo@kbblegal.com <br><br> TOLL-FREE (877) 800-0858 | 100 35TH STREET. <br> UNION CITY, NEW JERSEY 07087 <br> (201) 319-0200 <br><br> 233 BROADWAY <br> NEW YORK, NEW YORK 10279 <br> (212) 524-6833 <br> _____ <br> 420 BROADWAY <br> BAYONNE, NEW JERSEY 07002 <br> (201) 436-8070 |

October 6, 2010

**Via Electronic Filing**

Hon. Esther Salas, U.S.M.J.
Martin Luther King Federal Building & Courthouse
50 Walnut Street
Newark, NJ  07102

    Re:    <u>Rosario v. Carillo et. al.</u>
             Civil Action No. 08-4495 (PGS)

Dear Judge Salas:

       I represent Felix Rosario and Maria Rosario, the Plaintiffs in the above-referenced matter.  Please accept this letter brief in support of Plaintiffs' motion to extend discovery for the limited purpose of taking the deposition of Newark Police Director Gary McCarthy.  The deposition will not exceed three hours and may be done at Mr. McCarthy's convenience at the City of Newark Law Department.

       Mr. McCarthy's deposition will streamline future judicial proceedings, increase the accuracy of the jury's fact-finding function and cost little in terms of expense or delay.  Requesting the deposition of Mr. McCarthy at an earlier date would have been impractical, because prior to September 16, 2010, Plaintiffs lacked a good faith basis to

believe that Mr. McCarthy's deposition was likely to yield evidence that was relevant to the Rosario case.

Mr. McCarthy became Police Director for the City of Newark in September 2006, which as a matter of historical coincidence, was the same month that the individual Defendants in this case are alleged to have violated Plaintiffs' constitutional rights.  As the highest ranking member of the Newark Police Department, it seemed improbable that Mr. McCarthy could contribute any relevant evidence to the case at bar.  He was too removed from what happened at Felix Rosario's house on night of September 10, 2006, and he was too removed from Sgt. Lopez's internal affairs investigation regarding the same incident.  In fact, during Sgt. Lopez's deposition, when asked who had reviewed Sgt. Lopez's final internal affairs report, Sgt. Lopez said that the highest ranking member of the Newark Police Department that would have reviewed his report and findings was Deputy Chief Keith Rubel.

However, on September 9, 2010, the New Jersey Chapter of the American Civil Liberties Union filed a Petition with the United States Department of Justice seeking federal oversight of the Newark Police Department and the Newark Police Department's Internal Affairs Division because "the NPD is beset with serious systemic problems" which include:  (1) recurring instances of excessive force; (2) recurring instances of false arrests and malicious prosecutions; and (3) an ineffective process for identifying and deterring such conduct.  (Ex. 1, Sept. 9, 2010 ACLU Petition at 2.)  In support of its conclusions, the ACLU stated that during its 18 month study period, none of the 128 excessive force complaints filed with Newark's Internal Affairs Department were sustained, a number that is infinitely smaller than the 8% national average.  (Ex. 1, Sept.

9, 2010 ACLU Petition at 90.) Furthermore, of the 261 complaints filed with Newark's IA department during the 18 month study period, only 1--alleging an improper search--was sustained. The ACLU also uncovered that Newark's Internal Affairs Department fails to carry over unresolved cases from one year to the next on its reports to the New Jersey Attorney General's Office. Thus, for example, if a complaint is filed in 2008 and is not resolved before December 31 of that year, it will not appear on the 2009 report, making the number of open cases in 2009 seem smaller than they actually are.

As a result, 186 cases that were opened but unresolved in 2008 fell off the AG's radar screen in 2009. (Ex. 1, Sept. 9, 2010 ACLU Petition at 91.) According to the Star Ledger's independent audit, the outcome of 1 out of every 10 internal affairs complaints filed against Newark police officers from 2000 to 2008 is not reported to the Attorney General's Office, because unresolved complaints are not carried over to the following year's statistical reports. This amounts to 1,315 internal affairs complaints filed against Newark that have disappeared from reports provided by Newark to the Attorney General's Office over that 8 year period. (Ex. 2. Sept. 13, 2010 Star Ledger Article.) "'The reports are important to secure that there is external, objective review of the internal affairs process,' said Rutgers Police Institute Director Wayne Fisher, who helped write the state's internal affairs guidelines." (Ex. 2. Sept. 13, 2010 Star Ledger Article.)

In fact, accurate reporting in these cumulative annual reports to the AG's office is so important, that omission in these reports constitutes prima facie evidence of <u>Monell</u> liability. In <u>White v. City of Trenton</u>, an excessive force case against the Trenton Police Department, the Court denied the City's motion for summary judgment based on the fact

3

that, like Newark, the City of Trenton failed to carry unresolved cases from one year over to the following year's statistical data reports.

> The Court finds, however, that Plaintiff has presented sufficient evidence for a reasonable jury to find that the City Defendants had a custom of failing to effectively track excessive force complaints. Plaintiff's claim that the City Defendants were, as a matter of custom, inattentive to allegations of serious police misconduct is supported by the testimony of Director Santiago and the Report. Significantly, Director Santiago could not explain the Report, which could reasonably be read to indicate that there were a number of excessive force complaints for which there was no resolution: the **Report reveals that many cases pending at the end of the year on one report form did not carry over to the following year.** While Director Santiago could verify the accuracy of the Report, he was unable to explain how excessive force complaints were internally reviewed after they were dismissed by the Mercer County prosecutor's office as not being criminal in nature. (Santiago Dep., T:65:2-19; 69:13-22.) These cases appear to have fallen off the radar once they were released. Viewed in this context, if the City did not have a policy for effectively tracking complaints, officers in need of more training or discipline may not have received it. A reasonable jury could find the fact that many excessive force complaints appear to "drop off the radar" was "so likely to result in the violation of constitutional rights" as to demonstrate the City's deliberate indifference to its officers' use of force.

White v. City of Trenton, 2009 WL 1442765 (D.N.J.).

In his September 16, 2010, interview with the Star Ledger, Mr. Gary McCarthy addressed the findings contained in the September 9, 2010 ACLU Petition. Mr. McCarthy said that: (1) "he's concerned about the low level of excessive force complaints sustained against his cops"; (2) he's "disappointed his department has continued to report incomplete internal affairs statistics to the Attorney General's Office"; and (3) "the reforms he has made in his three year tenure, in a department beset

with problems when he arrived, have been overlooked." (Ex. 3, Sept. 16, 2010 Star Ledger Article.) In response to the statistic reported by the Star Ledger on September 13, 2010--that the outcome of 1 out of every 10 Internal Affairs complaints is not reported, in violation of state guidelines--Mr. McCarthy "promised swift action to fix the problem, saying he had tried to fix it earlier. 'We are looking at who's culpable for not doing that report properly,' he said. 'Somebody's going to probably be disciplined.'" (Ex. 3, Sept. 16, 2010 Star Ledger Article.)

Before the September 9, 2010, ACLU Petition and Mr. McCarthy's public response thereto, it would have been impossible for Plaintiffs in this case to proffer a good faith basis for deposing Mr. Gary McCarthy, whose affiliation with the Newark Police began in the same month as the alleged assault on Felix Rosario. However, now it is clear that when Mr. McCarthy took over as Director, he immediately recognized that his department was "beset with problems." Plaintiffs have a right to know precisely what those problems were. It is also clear that Mr. McCarthy attempted to fix some of the inadequate reporting problems, but was unable to do so. Plaintiffs have a right to know what problems existed, what changes were proposed and why the changes were not properly implemented. As Judge Wolfson set forth in White v. City of Trenton, supra., this line of inquiry is relevant to establishing Monell liability, because it will reveal a long-standing and still unresolved pattern, practice and culture of deliberate indifference to inadequate supervision, training and discipline.

In addition, Plaintiffs have just recently learned that on March 12, 2010, one of the individual defendants in this case, Officer Wayne Pugh[1], was caught on video camera

---

[1] Plaintiffs' counsel learned that the Officer in the video was Officer Wayne Pugh during a September 18, 2010 conversation with a member of the New Jersey Chapter of the ACLU who is intimately familiar with

kicking a defenseless man in the ribs twice, while the man was already on the ground being handcuffed by 3 other police officers.  The following link shows Officer Pugh kicking the man and shows Mr. Gary McCarthy's comments to the press after the video was made public:  http://www.myfoxny.com/dpp/news/local_news/new_jersey/newark-police-probe-rough-arrest-20100312

In his March 12, 2010 comments regarding the Pugh incident, Mr. McCarthy says that the case was being investigated to see if Officer Pugh abided by Newark Police Department use of force guidelines.  Plaintiffs have a right to know the outcome of that investigation to see whether Officer Pugh was disciplined or whether that too was swept under the rug.

> In *Beck v. City of Pittsburgh,* 89 F.3d 966, (3d Cir.1996), the Third Circuit found civilian complaints highly relevant to the plaintiff's burden of proving that the City of Pittsburgh had a custom of permitting its police officers to use excessive force in the performance of their duties, and, on appeal of a judgment as a matter of law under Fed.R.Civ.P. 50(a), the court considered as evidence a number of such complaints which spanned a time period longer than two years prior to the incident giving rise the plaintiff's complaint and complaints involving officers other than the officer who allegedly violated Plaintiff Beck's constitutional rights. *Id.* at *8-9. **The complaints included incidents that occurred <u>after</u> Beck's experience, since such complaints "may have evidentiary value for a jury's consideration whether the City and policymakers had a pattern of tacitly approving the use of excessive force."** *Id.* at *7.

<u>Torres v. Kuzniasz</u>, 936 F. Supp. 1201, 1206 (D.N.J. 1996) (citing *Beck v. City of Pittsburgh,* 89 F.3d 966, (3d Cir.1996)).

---

the incident.  In fact, Mr. Flavio Komuves of the ACLU can be seen in the news footage commenting on the incident.

Fed. R. Civ. Pro. 16 allows a Magistrate Judge, at her discretion, to modify pre-trial scheduling orders for good cause.

> A [scheduling order] shall not be modified except upon a showing of good cause and by leave of the district judge ...." FED. R. CIV. P. 16(b). "The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 625 (6th Cir.2002) (internal quotation marks and citation omitted). A district court should also consider possible prejudice to the party opposing the modification. *Id.*

Andretti v. Borla Performance Industries, 426 F.3d 824, 830 (6th Cir. 2005) (court amended pre-trial scheduling Order to permit late filing of summary judgment motion where movant diligently prepared case and there was no prejudice to nonmovant). Further discovery should be allowed where the "benefits of increased accuracy exceed the cost." See Young v. Verizon's Bell Atlantic Cash Balance, 489 F. Supp. 2d. 1101, 1106 (N.D. Ill 2007) (allowing additional discovery to plaintiff within context of appeal of ERIA claim against employer's pension benefits administrator).

In this case, Plaintiffs, have prosecuted their case diligently and have adhered to the Court's scheduling Orders to the best of their abilities. The Court may recall that paper discovery took much longer than anticipated because Defendants refused to produce the following: (1) transcripts of the police officers' IA interviews[2]; (2) a copy of Officer Leonard's psychological reports dealing with trauma allegedly sustained as a result of the Rosario incident; (3) written summaries of the IA interviews of the individual defendant police officers; (4) Sgt. Lopez's written analysis of the investigation which ultimately resulted in the exoneration of all five defendant police officers and (5)

---

[2] Defendants never actually produced transcripts. They just provided analog audio cassettes which Plaintiff had to send to a court reporting service to be transcribed.

7

the un-redacted IA files for the defendant officers relating to prior IA complaints.

In order to obtain these very important and relevant discovery materials, Plaintiffs had to file a motion with Your Honor on October 27, 2009, which was ultimately decided in January 2010. Since that time, Plaintiffs have taken 14 depositions, some of which involved police officers from Belleville which are not parties to this litigation. In addition, Plaintiffs have endeavored to engage in meaningful settlement negotiations and have been forced to respond to a frivolous motion to have plaintiff's counsel disqualified. Lastly, the foundational basis for deposing Mr. McCarthy just came to light in September. Before that time, I am certain that Mr. Lipshutz would have objected to the taking of Mr. McCarthy's deposition on relevancy grounds, as he did in the past with other discovery requests, which at the time where far more germane to this case than Mr. McCarthy's deposition would have been. Thus, it cannot be said that Plaintiffs failed to act diligently.

The deposition of Mr. McCarthy will take only two or three hours and will cost relatively nothing in time or expense. However, the deposition will streamline the trial in that Mr. McCarthy can speak to the deficiencies he saw in the police department when he took over as director and make them a matter of record. This will eliminate the need to call Mr. McCarthy and even maybe Sgt. Lopez as a witness at trial to establish <u>Monell</u> liability.

Defendants will suffer no prejudice. We can accomplish Mr. McCarthy's deposition quickly and well before Defendant's expert reports are due.

For the reasons set forth herein, Plaintiffs request that the Court allow Plaintiffs to take the videotaped deposition of Mr. Gary McCarthy, Director of the Newark Police Department.

    Very truly yours,

    s/ Raoul Bustillo

    Raoul Bustillo, Esq.